UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Derrick Twardoski, | ) | |
|     Plaintiff, | ) | |
| v. | ) | Case No. 1:22-cv-07163 |
| | ) | |
| Illinois Department of Corrections, | ) | |
| an Illinois State agency, | ) | |
| Ryan Woods, as Warden of Sheridan | ) | Judge Franklin U. Valderrama |
| Correctional Center, | ) | |
| Latoya Hughes, as Director of the Illinois | ) | Magistrate Judge Daniel P. McLaughlin |
| Department of Corrections, | ) | |
| Wexford Health Sources, Inc., | ) | |
| Kimberly Albertus, | ) | |
| Centurion of Illinois, LLC, and | ) | |
| Riliwan Ojelade. | ) | |
|     Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION OF DEFENDANT CENTURION OF ILLINOIS LLC'S RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff DERRICK TWARDOSKI, by and through his attorneys, LITCHFIELD CAVO LLP, for his response in opposition to Defendant, CENTURION OF ILLINOIS LLC's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), states as follows:

**INTRODUCTION**

Defendant Centurion of Illinois, LLC ("Centurion") seeks dismissal of Count V of Plaintiff Derrick Twardoski's Sixth Amended Complaint by characterizing Plaintiff's allegations as an impermissible attempt to impose respondeat superior liability. That reading ignores both the substance of the pleaded facts and the well-settled principle that, at the pleading stage, a plaintiff need only allege facts permitting a reasonable inference that a private medical contractor maintained policies or practices causing constitutional deprivation. Twardoksi has done so here.

Twardoksi's Sixth Amended Complaint alleges that after Centurion assumed responsibility for medical care at Sheridan Correctional Center ("SCC"), Twardoksi experienced months-long

denial of access to a physician, continued failure to implement ordered treatment, and rejection of a physical therapist's wheelchair recommendation. These allegations plausibly support the inference that Centurion maintained policies or systemic practices of inadequate physician staffing and delegation of medical decision-making to non-physician staff, resulting in deliberate indifference to Plaintiff's serious medical needs. At this stage, nothing more is required. Accordingly, Centurion's Rule 12(b)(6) motion should be denied.

## LEGAL STANDARD

In evaluating a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), the Court should assume that all well-pleaded factual allegations in the Complaint are true, drawing all reasonable inferences in plaintiffs' favor. *Zahn v. N. Am. Power & Gas, LLC,* 815 F.3d 1082, 1087 (7th Cir. 2016); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 463 (7th Cir. 2010).

"The complaint need only contain a short and plain statement of the claim demonstrating entitlement to relief." *Pierce v. Zoetis, Inc.,* 818 F.3d 274, 277 (7th Cir. 2015); Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are unnecessary; the Complaint must only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Under this framework, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In assessing this likelihood, the Court should "view[] the complaint as a whole" rather than focusing on isolated fragments. *Olson v. Champaign Cty.,* 784 F.3d 1093, 1101-02 (7th Cir. 2015). A plaintiff is not required to prove his case at the pleading stage. *See Iqbal*, 556 U.S. at 678.

2

**FACTUAL ALLEGATIONS**

Twardoski is an inmate at SCC who suffers from ligament laxity, a serious medical condition causing painful hyperextension of his knees and significant difficulty walking. (Dkt. 160, ¶¶ 11-12). Treating physicians at SCC diagnosed Twardoksi's condition and prescribed specific medical interventions, including hinged knee braces designed to prevent hyperextension and reduce pain. (Dkt. 160, ¶¶ 13, 18-19, 36-38).

Despite these diagnoses and prescriptions, Twardoksi did not receive the prescribed hinged knee braces. Instead, medical staff proposed inadequate alternatives, which Twardoksi had previously used without success. (Dkt. 160, ¶¶ 16-17, 20-24). As a result, Twardoksi continued to experience severe and worsening pain. (Dkt. 160, ¶¶ 30-45). Meanwhile, SCC continued to require Twardoksi to walk more than a mile each day to obtain meals and medications, exacerbating his condition and preventing recovery. (Dkt. 160, ¶¶ 31, 48-50). Although a physician eventually approved a medical lay-in to reduce Twardoksi's required movement, that accommodation was partially implemented and then revoked without explanation, resulting in further pain and disciplinary consequences. (Dkt. 160, ¶¶ 53-68).

On July 29, 2025, Defendant Centurion assumed responsibility for providing medical services at SCC. (Dkt. 160, ¶ 6). After Centurion took over, Twardoksi repeatedly requested evaluation by a medical doctor but was not seen by a physician, despite multiple medical notations indicating that re-evaluation was necessary. (Dkt. 160, ¶¶ 69, 71-73, 76-82).

During this period, Twardoksi was referred to off-site physical therapy. The physical therapist recommended that he be provided a wheelchair to allow him to travel long distances within SCC without exacerbating his condition. (Dkt. 160, ¶ 70). Centurion took no action to implement this recommendation. (Dkt. 160, ¶ 70). Twardoksi's subsequent requests for a

wheelchair, transfer to housing closer to the medical facility, and physician evaluation were repeatedly denied or ignored. (Dkt. 160, ¶¶ 72-79).[1]

As alleged, Centurion failed to provide adequate physician staffing at SCC, resulting in prolonged delays in physician access and permitting non-physician staff to disregard or override medical recommendations and orders. (Dkt. 160, ¶ 101). Centurion failed to ensure that Twardoksi received physician-ordered treatment, including a hinged knee brace, and rejected reasonable mobility accommodations necessary to prevent further injury and pain. (Dkt. 160, ¶¶ 102-103).

## ARGUMENT

### I. Centurion's Motion to Dismiss Should Be Denied Because Plaintiff's Sixth Amended Complaint States a Claim Upon Which Relief Can Be Granted.

Centurion's motion asserts that Plaintiff's allegations amount to an impermissible attempt to impose respondeat superior liability without alleging a practice of deliberate indifference and further contends that even if alleged, Centurion's recent tenure at SCC precludes any inference of a widespread policy or practice. These arguments are inconsistent with the governing pleading standard and established *Monell* principles.

Twardoski's Complaint plausibly alleges that Centurion maintained systemic practices, most notably inadequate physician staffing and institutional tolerance of non-physician override of medical judgment, that caused the prolonged denial of constitutionally adequate medical care. At this stage, Plaintiff is not required provide detailed internal policy evidence to state a *Monell* claim and the temporal scope of Centurion's conduct does not justify dismissal.

---

[1] Plaintiff acknowledges that he has recently been transferred to another building closer to the medical building and that his medical lay-in has been resumed, although he has not received the written permit for the medical lay-in so that it can be cancelled without notice. He still has not seen a medical doctor at SCC for re-evaluation, has not received the hinged brace prescribed long ago, and has not been provided use of a wheelchair to go to more distant facilities such as the library and the chow hall.

4

    A.    <u>Plaintiff's Complaint Sufficiently Alleges Centurion's Liability Under *Monell*.</u>

It is well established that private healthcare contractors providing medical services to prisoners act under color of state law, and that the 7th Circuit consistently applies *Monell* doctrine to such private corporations, treating them as municipalities for purposes of Section 1983 liability. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) ("for purposes of § 1983, we have treated a private corporation acting under color of state law as though it were a municipal entity"); *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014) (acknowledging that circuit precedent extends *Monell* protections to private corporations acting under color of law); *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-54 (7th Cir. 2021) ("in a case against a private contractor that provides healthcare to incarcerated people, the 'critical question' for liability is 'whether a municipal (or corporate) policy or custom gave rise to the harm'").

A *Monell* claim can proceed through any three mechanisms: (1) an express policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *Howell*, 987 F.3d at 654; *Monell v. Dept. of Soc. Serv.*, 436 U.S. 690-91 (1978). To recover, the plaintiff must offer evidence that their injury was caused by a "policy, custom, or practice of deliberate indifference to medical needs or a series of bad acts that together raise the inference of such a policy." *Shields*, 746 F.3d at 796.

At the pleading stage however, this Court has repeatedly recognized that plaintiffs are not held to a heightened standard when pleading a *Monell* claim. *See Wade v. Rizzuto*, No. 14 C 3825, 2016 WL 1247472, at *5-6 (N.D. Ill. Mar. 30, 2016) citing *McCormick v. City of Chicago,* 230 F.3d 319, 323 (7th Cir. 2000)); *Jacoby v. DuPage Cty. Ill.,* No. 12 CV 6539, 2013 WL 3233339,

at *2 (N.D. Ill. June 26, 2013); *Hunt v. Hardy,* No. 11 C 4396, 2012 WL 2458943, at *6 (N.D. Ill. June 27, 2012).

An official capacity claim can survive "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Wade,* 2016 WL 1247472, at *6 (quoting *Riley v. Cnty of Cook*, F. Supp. 2d 856, 861 (N.D. Ill. 2010)). In other words, at the pleading stage a plaintiff need only allege facts that permit a reasonable inference that the alleged practice constitutes a custom. *Gill v. City of Milwaukee,* 850 F.3d 335, 344 (7th Cir. 2017).

Here, Twardoski alleges that after Centurion assumed responsibility for SCC's medical services on July 29, 2025, he was not seen by a medical doctor at that time for four months, despite repeated requests and repeated notations by medical staff that physician re-evaluation was necessary. (Dkt. 160, ¶¶ 82, 101). Twardoski further alleges that Centurion failed to implement physician-ordered treatment, including provision of a hinged knee brace, and rejected a physical therapist's recommendation that he be provided with a wheelchair to avoid exacerbating his medical conditions. (Dkt. 160, ¶¶ 70, 101-103).

These allegations are beyond an attempt to impose vicarious liability for the acts of an employee. They describe systemic failures, months-long lack of physician access that remain ongoing, and repeated disregard of medical orders, that plausibly support an inference of inadequate staffing and institutional practices permitting non-physician staff to override or ignore professional medical judgments. Furthermore, these allegations reflect those asserted against Wexford for the earlier period of Twardoski's incarceration and are sufficient to place Centurion on notice of the nature of the claim and the grounds upon which it rests.

Therefore, Twardoski has plausibly alleged that Centurion's systemic practices caused the prolonged denial of constitutionally adequate medical care, rendering dismissal inappropriate at this stage. This Court should deny Centurion's motion.

### B. Centurion's Tenure at Sheridan Does Not Defeat Plaintiff's *Monell* Claim.

Centurion contends that the brevity of its tenure at SCC forecloses any inference of a widespread practice. This argument is contrary to settled *Monell* principles, which do not require allegations of a specific time of misconduct. *See Howell*, 987 F.3d at 654 ("we have not adopted bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice under *Monell*").

Rather, the relevant inquiry is whether the alleged practices plausibly reflect institutional decision-making. *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017). A plaintiff need only present "some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events." *Savory v. Cannon*, 532 F.Supp.3d 628, 638 (N.D. Ill. 2021) (quoting *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020)). This framing supports the institutional decision-making standard, focusing the inquiry on whether alleged practices reflect deliberate institutional choices rather than isolated employee misconduct.

In the instant matter, Twardoski alleges that for the entire period following Centurion's assumption of medical care at SCC, he was still denied physician access and necessary accommodations despite repeated requests and documented medical need. At the pleading stage, this is sufficient to support the inference of a systemic practice attributable to Centurion's operational decisions. Thus, the allegations plausibly state a claim for which relief can be granted.

**CONCLUSION**

Plaintiff has plausibly alleged that Centurion maintained systemic practices at SCC that resulted in the prolonged denial of constitutionally adequate medical care. Plaintiff's Sixth Amended Complaint sufficiently alleges facts to permit a reasonable inference that Centurion's operational decisions and institutional practices caused Plaintiff harm. For these reasons, Plaintiff DERRICK TWARDOSKI, respectfully requests this Court deny Defendant CENTURION OF ILLINOIS LLC's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for such other relief that this Court deems proper and just.

Respectfully submitted,

/s/ Nicole S. Bratton
Attorney for Plaintiff, Derrick Twardoski

Alan I. Becker (ARDC No. 0147524)
Nicole S. Bratton (ARDC No. 6352578)
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, Illinois 60606
Phone: 312-781-6622
Fax:    312-781-6630
Email: Becker@LitchfieldCavo.com
       Bratton@LitchfieldCavo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and is available for viewing and downloading from the CM/ECF system. The foregoing document was served upon all attorneys of record via the CM/ECF system on this 22nd day of January 2026.

                                                */s/ Nicole S. Bratton*
                                                Nicole S. Bratton