**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DERRICK TWARDOSKI
          Plaintiff,

    v.

ILLINOIS DEPARTMENT OF
CORRECTIONS, et al.

          Defendants.

No. 1:22-cv-07163
Hon. Judge Franklin U. Valderrama

**ORDER**

Plaintiff Derrick Twardoski, an inmate at Sheridan Correctional Center (Sheridan), an Illinois Department of Corrections (IDOC) facility, suffers from painful conditions affecting his ability to walk. A physician at Sheridan prescribed knee braces for Twardoski with a lockable hinge. Sheridan refused to issue the knee braces. Moreover, Twardoski's requests for accommodations for his condition have repeatedly been denied. Twardoski sued IDOC, Ryan Woods, Sheridan's Warden, and Latoya Hughes, Director of IDOC (collectively Defendants), among others, under 42 U.S.C. § 1983 alleging that his treatment violated the Eighth Amendment as well as the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* R[1]. 160, Sixth Amended Complaint (SAC).

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

Before the Court is Defendants'[2] Motion to Dismiss the SAC[3] pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 121, Motion to Dismiss. For the reasons that follow, the Court grants Defendants' motion in part and denies it in part.

## Background[4]

Twardoski is an inmate at Sheridan, who suffers from ligament laxity, a painful condition that at times makes walking difficult or practically impossible. SAC ¶¶ 1, 11. Woods is the Warden at Sheridan. SAC ¶ 3. Hughes is IDOC's Director. *Id.* ¶ 4. A common treatment for ligament laxity is the use of knee braces. *Id.* ¶ 12. In December 2021, a physician at Sheridan examined Twardoski and diagnosed chronic bilateral knee pain and prescribed Twardoski knee braces. *Id.* ¶ 13. In July 2022, a physician at Sheridan determined that Sheridan did not have the type of knee brace Twardowski needed and directed that it be ordered. *Id.* ¶ 18. The knee braces were ordered. *Id.* ¶ 19. As of August 2022, the knee braces had not yet been provided to Twardowski. *Id.* ¶ 21. Sheridan requires Twardoski to walk the medline to buildings for meals and to obtain medications, including those for his knee and other conditions.

---

[2]While the introduction of the motion states it is brought on behalf of Defendant Hughes and Woods, the body of the motion also includes arguments on behalf of IDOC. R. 168, Mot. Dismiss at 1.

[3]Defendants' motion to dismiss was originally directed at Twardoski's Fifth Amended Complaint. R. 121, Mot. Dismiss at 1. Twardoski subsequently moved to amend the complaint, indicating that the amendments to the complaint do not impact Defendants' motion and that the motion can apply to the SAC. R.159, Minute Entry.

[4]The Court accepts as true all the well-pled facts in the complaint and draws all reasonable inferences in favor of Twardoski. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

*Id.* ¶ 31. Twardowski was concerned about the delay and filed a grievance regarding Sheridan's failure to provide him with the replacement knee braces. *Id.* ¶¶ 22–23.

Twardowski was subsequently informed that the knee braces with the lockable hinge had been received, but associate Warden Donald Terry refused to issue them to Twardowski. *Id.* ¶ 24. Terry was concerned that the braces having removable metal supports could be weaponized. *Id.* ¶ 25.

In December 2023, Twardoski again complained about the failure to provide him with knee braces. *Id.* ¶ 35. A physician at Sheridan noted Twardoski's joint laxity and ordered x-rays. *Id.* ¶ 36. The x-rays revealed degeneration of Twardoski's right knee. *Id.* ¶ 37. Twardoski continued to complain of severe leg pain and in July 2024, a physician diagnosed Twardoski with iliotibial band syndrome (IT Band syndrome), a condition which involves irritation of a tendon from rubbing against hip or knee bones. *Id.* ¶¶ 40, 42. IT Band syndrome can result from excessive rotation of the legs, including from hyperextension of the knee. *Id.* ¶ 43. It was not until December 2024, when Twardoski was referred to an orthopedic surgeon to address his IT Band syndrome. *Id.* ¶ 44. The orthopedic surgeon recommended physical therapy and informed Twardoski that the IT Band syndrome would have to be resolved before his ligament laxity could be addressed. *Id.* ¶ 45. The physician also found that Twardoski had a meniscus tear in his knee. *Id.*

Twardoski's physical condition has deteriorated to the point where he often finds it too painful to walk to obtain his medications, including his medications for his knee pain. *Id.* ¶ 55. In February 2025, Twardoski requested a permit for a medical

3

lay-in. *Id.* ¶ 51. A medical lay-in means that a nurse would provide him with his meals and medication in his cell. *Id.* Twardoski's request for a medical lay-in was denied initially but later approved by a physician in April 2025. *Id.* ¶¶ 52–53. Twardoski's medical lay-in resulted in meals delivered to his cell, but not his medications. *Id.* ¶ 54. Twardoski requested that the lay-in includes the delivery of medication as well, but that request was ignored. *Id.* ¶¶ 55–56. As a result, Twardoski went without medication and was cited several times by Sheridan staff for failing to walk to the medical building. *Id.* ¶¶ 57, 60. On June 23, 2025, Dr. Albert Kahn, the attending physician at Sheridan prescribed Twardoski a "permit for medical lay-in due to severe pain in legs for meds." *Id.* ¶ 61. Twardoski's medical lay-in permit was set to last until April 2026. *Id.* ¶ 68. However, on June 24, 2025, Dr. Kahn's prescription for medical lay-in was stricken with a notation stating "error permit cancelled." *Id.* ¶ 63. On information and belief, Twardoski believes Sheridan was at least partly responsible for overruling the prescription for a medical lay-in. *Id.* ¶ 64.

Twardoski did not learn about the revocation until July 2025. *Id.* ¶ 68. As a result of the revocation, Twardoski went without meals when he could not walk to the dining facility. *Id.* In July 2025, a physical therapist recommended a wheelchair for Twardoski to avoid walking long distances, *Id.* ¶ 70, but Twardoski's requests for a wheelchair have been repeatedly denied. *Id.* ¶¶ 70, 72, 74. Sheridan continued to require Twardoski to walk the medline and to issue citations against him for failures to walk the medline. *Id.* ¶¶ 80–81.

Twardoski faced disciplinary action because of the citations for failing to walk the medline. *Id.* ¶ 65. Twardoski requested Dr. Kahn to testify as a witness, but his request was denied by the disciplinary committee. *Id.* ¶ 66. Twardoski also requested the committee review his medical records but was also denied. *Id.*

Twardoski sued Defendants, among others, alleging violations of his Eighth Amendment rights for failing to provide adequate medical care. *Id.* ¶¶ 84, 100–103 (Count V). Before the Court is Defendants' fully briefed Motion to Dismiss Twardoski's SAC under Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.       Eighth Amendment (Count I)

In Count I, Twardoski alleges that Defendants' refusal to treat his ligament laxity constituted cruel and unusual punishment in violation of the Eighth Amendment. SAC ¶¶ 83–84.

"The Eighth Amendment prohibits deliberate indifference to prisoners' serious medical needs because it constitutes an unnecessary and wanton infliction of pain." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a claim for deliberate indifference for deficient medical care, a plaintiff must allege that: (1) he suffered from an objectively serious medical condition; and (2) the individual defendant was deliberately, that is, subjectively, indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022–23 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It "need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019) (cleaned up). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. *King v.*

*Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994) (cleaned up).

Defendants argue that Count I should be dismissed because Twardoski fails to allege sufficient facts as to Defendants' personal involvement in the alleged constitutional violation, and his claim against Hughes and Woods is barred by the doctrine of sovereign immunity. Mot. Dismiss at 4–5.

Under Section 1983, a person may sue anyone, who, while acting under color of law, causes him to be deprived of his constitutional rights. 42 U.S.C § 1983; *Connick v. Thompson*, 563 U.S. 51, 60-62 (2011). To be liable under Section 1983, the individual defendant must have caused or participated in a constitutional deprivation. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (cleaned up). Personal liability exists where the conduct occurred at the defendant's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

Defendants argue that Twardoski fails to allege any facts regarding Woods and Hughes in the complaint. Mot. Dismiss at 5. From Defendants' perspective, there are no allegations in the complaint that indicate that Hughes and Woods knew of Twardoski's medical issues or refused or impeded his medical care. Mot. Dismiss at 5. Twardoski does not disagree.

Instead, Twardowski maintains that he is not seeking to hold the Defendants individually liable for his medical care. Resp. at 5. Rather, he seeks to hold

7

Defendants' responsible for the enforcement of official policies that disregard his medical condition. *Id.* Specifically, Sheridan's policy requiring inmates to walk the medline, even if they are willing to forego some medication. Resp. at 5. Twardowski maintains that he has named Hughes and Woods in their official capacity "because they are the officials who can modify this policy." *Id.* Defendants concede that Twardoski has "the ability to recover injunctive relief on a policy claim against Woods or Hughes, but nothing more." Reply at 3. The Court agrees with Defendants.

Recall that Twardoski asserts the claims against Hughes and Woods in their official capacity. "But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Molina v. Latronico*, 430 F.Supp. 3d 420, 431 (N.D. Ill. 2019) (cleaned up). The Eleventh Amendment bars suits by private litigants against states or state agencies brought in federal court. *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). Here, Twardowski is suing Hughes and Woods in their official capacities and there is no indication that the State of Illinois has consented to suit. The Court, therefore, dismisses any official capacity claims for damages against Defendants Hughes and Woods.

There are, however, three exceptions to Eleventh Amendment immunity, where: (1) the suit seeks prospective injunctive relief against state officials for violations of federal law; (2) Congress explicitly abrogated state immunity from suit; and (3) the state waived its sovereign immunity and consented to suit in federal court. *MCI Telecom. Corp. v. Ill. Commerce Comm'n.*, 183 F.3d 558, 563 (7th Cir. 1999).

8

The first exception is at issue here. The Eleventh Amendment does not prohibit injunctive relief against state officials and state agencies. *See, e.g.*, *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Under *Young*, state officials may be sued in their official capacities "for prospective injunctive relief to enjoin ongoing violations of federal law." *Lukaszcyk v. Cook County*, 47 F.4th 587, 604 (7th Cir. 2022) (cleaned up). As the Seventh Circuit has explained, "[a] court therefore "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (cleaned up).

Here, Twardowski seeks injunctive relief against IDOC and Hughes and Woods in their official capacities. As Defendants admit, "official capacity claims against Woods and Hughes are treated as claims directly against the state." Memo. Dismiss at 6. Twardowski asks that he be provided with appropriate knee braces as prescribed and that he be granted medical lay-in for medications and meals. While Defendants make much of whether IDOC's policies actually caused Twardowski's injuries, or whether Twardowski was actually in need of mobility assistance, the Court must draw all inferences in Twardowski's favor at this stage.[5] Twardowski alleges cruel and unusual punishment through a policy that denied him his supported

---

[5]The Court notes that although Defendants have a section entitled "No Allegation of a Policy or Custom," Memo. Dismiss at 5, this section similarly focuses on the argument that the individuals are not proper defendants, rather than whether Twardoski has actually pled a policy or custom. Defendants argue that Woods nor Hughes could have created a policy or practice which caused Plaintiff's injuries, because they are not medical professionals. Memo. Dismiss at 7. The allegations against Hughes and Woods are in their official capacities, meaning the allegations are against IDOC, and not the individuals, and Plaintiff alleges that IDOC's policies caused Eighth Amendment violations, and these individuals have the power to change those policies should he receive injunctive relief.

braces and required him to walk long distances daily without regard to pain, and which was not changed even after reporting the pain and difficulties. SAC ¶ 84. Taking the allegations of the complaint in the light most favorable to Twardowski, the Court finds that his request for injunctive relief is proper against these Defendants.

In sum, the Court grants the motion to dismiss against Defendants Hughes and Woods in their individual capacities but denies the motion to the extent it seeks to preclude injunctive relief against IDOC and Defendants Hughes and Woods in their official capacities.

## II. ADA (Count II)

In Count II, Twardoski alleges that his knee condition, which makes walking painful, constitutes a disability under the ADA and the Rehabilitation Act and that the Defendants failed to provide him with a reasonable accommodation in violation of the ADA and the Rehabilitation Act. SAC ¶¶ 85–93.

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "The ADA is organized into three titles prohibiting discrimination across three major spheres of public life: employment (Title I); public services, programs, and activities (Title II); and public accommodations (Title III)." *Lacy v. Cook Cnty.*, 897 F.3d 847, 852 (7th Cir. 2018). To that end, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

10

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The ADA's definition of public entity "covers instrumentalities of a State, which would include state prisons." *Simmons v. Godinez*, 2017 WL 3568408 at *5 (N.D. Ill. Aug. 16, 2017).

The Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a)). The ADA and the Rehabilitation Act are "functionally identical." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). The "relief available under both the statutes is coextensive," thus as one claim rises or falls, so does the other. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

As an initial matter, Defendants argue that the only proper party to this claim is IDOC. Mot Dismiss at 8–9. Defendants contend that in suits under Title II of ADA, the proper party is a "public entity," rather than a natural person. Mot Dismiss at 9. Twardowski does not dispute that "employees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012); *see* 42 U.S.C. § 12132. "As such, only the state agency or an official acting in his or her official capacity may be sued under these statutes." *Bakaturski v. Pittman*, 2023 WL 3626431, at *4 (S.D. Ill. May 24, 2023). Twardowski again states that "[w]hile IDOC may be the only defendant liable for damages under Count II, the individual Movants remain appropriate parties for

11

prospective injunctive relief." Resp. at 8. Twardowski's complaint confirms that Twardowski only brings this suit against Defendants in their official capacity. Compl. ¶¶ 3–4. Thus, the suit in essence is only brought against the agency. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670, n.2 (7th Cir. 2012) ("The Director (she has since been replaced) is named in her official capacity, and thus the suit is against the agency."). Accordingly, the Court again grants the motion to dismiss to the extent that Twardowski's claims are brought against Defendants in their individual capacity, but otherwise denies the motion to dismiss the individuals in their official capacity.

Next, Defendants contend that Twardoski's ADA and Rehabilitation Act claims fail because he does not plausibly allege that he was denied services because of his disability. Memo. Dismiss at 8. The way Defendants see it, Twardoski's claim is better characterized as a lack of medical care for his disability, even if pled as a "refusal to accommodate." *Id.* at 8–9. Twardowski responds that while some of his allegations do pertain to his medical treatment (*i.e.* providing a deficient knee brace for his condition), other allegations are appropriately characterized as accommodations for a disability (*i.e.* approval for medical lay-in, or provision of a wheelchair). Resp. at 7.

To state a claim under the ADA and the Rehabilitation Act, Twardoski must allege that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the "services, programs, or activities of a public entity"; (3) he was denied those benefits or otherwise discriminated against on account of his disability, and for the Rehabilitation Act claim, the additional requirement is that (4) the defendant is

12

an entity which receives federal funds. *Clemons v. Dart*, 168 F. Supp. 3d. 1060, 1065 (N.D. Ill. 2016) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). "Refusing to make reasonable accommodations is tantamount to denying access[.]" *Jaros*, 684 F.3d at 672 (citation omitted). Indeed, the ADA's implementing regulations "require the prison to make reasonable modifications to its policies or practices to avoid denying [plaintiff] a service on account of his disability." *Shaw v. Kemper*, 52 F.4th 331 (7th Cir. 2022) (citing 28 C.F.R. § 35.130(b)(7)).

"Disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Jaros,* 684 F.3d at 672 (citing 42 U.S.C. § 12102(2)(A)). Defendants do not dispute that Twardoski's condition constitutes a disability. Further, "[a]lthough incarceration is not a program or activity, the meals and showers made available to inmates are." *Id.* Nor do Defendants dispute that Twardoski has pled that he was at times denied access to meals—a service under the ADA and Rehabilitation Act. Thus, the Court turns to the contested element: whether Twardoski has pled that he was denied the benefits of the services on account of his disability. For the reasons stated below, the Court finds that he has.

Defendants cite to *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) and *Perrey v. Donahue*, 2007 WL 4277621 (N.D. Ind. Dec. 3, 2007) in support of their argument that Twardoski has only pled a lack of medical care, and not a refusal to make reasonable accommodations on account of a disability. Memo. Dismiss at 8–9.

Twardoski does not directly respond to these cases. Nevertheless, the Court examines them below.

In *Bryant*, the Seventh Circuit held that the plaintiff failed to state a claim[6] under the ADA, because his claim was that the prison did not install guardrails to aid him in getting out of bed, causing him to fall. 84 F.3d at 249. The Seventh Circuit stated that "[s]leeping in one's cell is not a 'program' or 'activity'" within the meaning of the ADA. *Id.* Specifically, "he [was] not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his [condition] would prevent him from taking part in without some modification of the program. He [was] complaining about incompetent treatment of his [condition]." *Id.*

In *Perrey*, the district court granted the motion to dismiss plaintiff's ADA and Rehabilitation Act claims because he did not allege that the prison "denied him access to prison programs because of his disability. Rather, he alleges that they 'denied [him] access to adequate medical care and treatment." 2007 WL 4277621, at *4. Indeed, the court's recitation of the facts did not recount any service or program that plaintiff was denied, but rather, alleged a lack of care for his Hepatitis C, which caused damage to his liver and ongoing pain. *Id.* at *2.

Twardoski responds that Defendants ignore the fact that he has pled denial of a service—access to meals—and that the denial was on account of the prison's failure to reasonably accommodate his disability by providing lay-in services. Twardoski contends that this case is akin to *Shaw v. Kemper*, 52 F.4th 331 (7th Cir. 2022). In

---

[6]While the Seventh Circuit said plaintiff "failed to state a claim," the case was decided at the summary judgment stage.

*Shaw*, the Seventh Circuit reversed the district court's dismissal of plaintiff's ADA and Rehabilitation Act claim on a motion to dismiss. The plaintiff in *Shaw* required a wheelchair to use the restroom. *Id.* at 334–35. The prison, however, had a policy of allowing non-disabled prisoners to use the wheelchair-accessible toilet. *Id.* Consequently, on multiple occasions, the plaintiff was denied access to the toilet because it was otherwise in use by a non-disabled individual. *Id.* When plaintiff complained, the prison staff did not change the policy or do anything else to help him. *Id.* The Seventh Circuit stated that plaintiff had plausibly alleged that the prison intentionally denied him access to a program or service—use of the handicapped toilet—by not making reasonable accommodations for his disability. *Id.* at 334.

Twardoski argues that just like *Shaw*, he alleges he was being denied meals because he could not make it to the cafeteria on account of his disability. He reported this problem, yet the prison did not make reasonable accommodations to allow him access to meals. Defendants unconvincingly attempt to distinguish *Shaw*. In *Shaw*, according to the Defendants, the plaintiff did not require the discretion of medical staff to grant a medical permit to use a handicapped-accessible restroom. Reply at 5. From Defendants' perspective, unlike *Shaw*, Twardoski's requests for accommodations were ultimately left to the discretion of medical staff to grant or revoke medical permits for medical lay-in and a wheelchair. *Id.* However, at this stage of the proceedings, the Court must accept Twardoski's well-pled facts as true and draw all reasonable inferences in favor of Twardoski. *See Platt*, 872 F.3d at 851. Twardoski's complaint alleges that prison medical staff granted medical permits for

15

a medical lay-in and recommended a wheelchair for Twardoski, SAC ¶¶ 53, 61, 70, but these accommodations were nonetheless not granted or were revoked by Sheridan. SAC ¶¶ 54–56, 63–64, 70, 72 74.

Defendants' reliance on *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015) fares no better. Defendants point out that unlike *Wagoner*, there is no indication that Twardoski *needed* a wheelchair. Reply at 6. But as the Seventh Circuit noted in *Shaw*, *Wagoner* was decided at the summary judgement stage, which is not directly applicable to a Rule 12(b)(6) motion to dismiss. *Shaw*, 52 F.4th at 335. At this stage, taking the alleged facts as true and taking all reasonable inferences in favor of Twardoski, Twardoski has alleged that he was denied a reasonable accommodation for his disability, resulting in the denial of access to meals. *See*, 684 F.3d at 672 ("The refusal to accommodate [inmate's] disability kept him from accessing meals and showers on the same basis as other inmates . . . We conclude that he has pleaded a plausible claim for failure to make reasonable accommodations under the Rehabilitation Act.").

Finally, the Court finds instructive *Scott v. Jeffreys*, 2022 WL 2715802 (N.D. Ill. July 13, 2022). In *Scott*, the plaintiff, an inmate with paraplegia, could not effectively use his catheter due to his assignment on the bottom bunk of a bunk bed. *Id* at *1. His estate sued the director of IDOC in his official capacity for violations of the ADA and the Rehabilitation Act. *Id*. The defendant moved to dismiss the claim pursuant to a Rule 12(b)(6) motion. *Id*. In doing so, the defendant, like the Defendants here, argued that managing the catheter was medical treatment and did not

16

constitute a denial of a "service, program, or activity" under the ADA. *Id* at \*3. (citing to *Bryant*, 84 F.3d at 247). However, this Court found that plaintiff had stated a claim because the bed prevented plaintiff's proper management of the catheter, which denied plaintiff the services of restroom facilities in violation of the ADA. *Id* at \*4. Here, the failure to accommodate Twardoski's disability by providing a prescribed medical lay-in and wheelchair by prison officials have denied Twardoski access to prison services like meals and medical services in violation of the ADA. Thus, Twardoski's complaint plausibly states a claim under the ADA and Rehabilitation Act.

Defendants' argument that Twardoski's allegations are solely incidents of inadequate healthcare falling outside the scope of the ADA is unconvincing. True, the Seventh Circuit has found that the ADA does not create a claim based on the denial of medical care. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Perrey v. Donahue*, 2007 WL 4277621 at \*4 (N.D. Ind. Dec. 3, 2007). However, Defendants merely cite to the legal propositions in *Bryant* and *Perrey* and fail to draw meaningful similarities between their claims and Twardoski's. Mot. Dismiss at 8–9. The Court will not do the work for Defendants.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss Twardoski's Sixth Amended Complaint is granted in part and denied in part. Count I may proceed against IDOC and Defendants Hughes and Woods in their official capacities for prospective injunctive relief regarding the denial of Twardoski's prescribed knee

brace and the med-line policy. Count II may proceed against IDOC and the individual defendants in their official capacities. The Court's dismissal of all claims is without prejudice and Twardoski may file an amended complaint on or before August 6, 2026. If Twardoski files an amended complaint on or before August 6, 2026, the Court directs Defendants to answer or otherwise respond on or before August 27, 2026.

Date: July 17, 2026

_____
United States District Judge
Franklin U. Valderrama

18